IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-HC-02101-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| PAUL NYHAN, | ) | |
| | ) | |
| Respondent. | ) | |

This case came before the court on November 8-9, 2012, for an evidentiary hearing to determine the merits of the government's petition to commit respondent Paul Nyhan (hereinafter "respondent") as a "sexually dangerous person" pursuant to 18 U.S.C. § 4248. The court renders this memorandum opinion in amplification of its pronouncement that respondent shall be committed to the custody of the Attorney General.

BACKGROUND

The procedure for commitment under § 4248 was enacted as part of the Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (hereinafter "Adam Walsh Act"). The statute authorizes the government to certify for commitment individuals within the custody of the Bureau of Prisons. 18 U.S.C. § 4248(a). Such certification automatically stays the person's release from custody, pending completion of the § 4248 proceedings, despite the expiration of the incarcerative portion of the person's criminal sentence. Id.

To obtain a commitment order pursuant to § 4248, the government must prove by clear and convincing evidence that the person (1) "has engaged or attempted to engage in sexually violent

conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) currently "suffers from a serious mental illness, abnormality, or disorder," id. § 4247(a)(6); and (3) as a result of the illness, abnormality or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," id. See United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Hall, 664 F.3d at 461 (quoting Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) and citing Addington v. Texas, 441 U.S. 418, 423–24 (1979)).

COURT'S DISCUSSION

Respondent was 40 years old at the time of the evidentiary hearing. At the time the government filed the certification commencing this commitment action, respondent was serving a 125-month term of imprisonment in the Bureau of Prisons, to be followed by three years of supervised release, for his 2004 conviction for distributing child pornography. Gov't Ex. 6 at 000004. His projected release date was October 13, 2012, but due to loss of good time credit it was extended to November 29, 2012. Respondent does not dispute that the first two prongs for civil commitment under § 4248 are established. Therefore, the court's analysis focuses on the third prong, whether respondent will have serious difficulty in refraining from sexually violent conduct or child molestation if released.

Regarding the third prong for civil commitment under § 4248, the Fourth Circuit provided the following general guidance:

> [T]he "serious difficulty" prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability

to refrain from acting upon his deviant sexual interests. Kansas v. Hendricks, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); id. at 357 (noting that civil commitment statutes may "provide [ ] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety ... provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); see also Kansas v. Crane, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.") "[This] lack of control [or] inability to control behavior will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Crane, 534 U.S. at 413, 122 S. Ct. 867 (internal quotation marks omitted).

Hall, 664 F.3d at 463.

Although respondent does not dispute that the first two prongs are satisfied, the details of respondent's prior offense conduct and his present psychological disorders inform the court's analysis of the third prong. On July 8, 1992, respondent was arrested on charges involving the molestation of a 13-year-old girl. Gov't Ex. 7 at 002332. Respondent was approximately 19 years old at the time of the incident and had been molesting the girl over a four to five-year period beginning when she was 8 years old and he was 14 or 15 years old. Id. Ex. 2 at 002621, Ex. 4 at 000753. He pled guilty and was sentenced to two years imprisonment, one of which was suspended. Id. Ex. 7 at 002332.

On July 15, 1992, respondent was arrested on charges of exposing himself to an 11-year-old girl. Id. at 002333. As part of law enforcement's investigation into the incident with the 13-year-old girl, other neighborhood children were interviewed. Id. at 002332. An 11-year-old girl reported

3

that on May 28, 1992 and July 6, 1992, respondent exposed himself to her numerous times as he stood in the doorway of his residence and that he asked her to come inside his home. Id. at 002333. He pled guilty and was sentenced to two years imprisonment to run concurrent with his sentence for molesting the 13-year-old girl. Id. On September 22, 1994, respondent was arrested for violating a protective order in place with respect to the 11-year-old victim. Id. at 002334. He pled guilty and was sentenced to one year imprisonment. Id.

On January 5, 1995, respondent was arrested for exposing himself to a young girl in a book store. Id. He pled guilty and was sentenced to two and half years imprisonment, which consisted of 17 months committed, the balance to be suspended, and three years probation. Id. On January 1, 1997, respondent was arrested on a charge of misdemeanor sexual battery for molesting a 7-year old and 11-year old girl and exposing himself to another 7-year-old-girl. Id. at 002335-36. He pled nolo contendere and was sentenced to 24 months probation and ordered to complete a 52-week batterer's counseling program, stay away from the victims, and register as a sex offender. Id. at 002335.

During the approximately two year period from March 1997 to February 1999, respondent was arrested on five distinct occasions for exposing himself to young girls ranging in age from five years old to ten years old. Id. at 002336-39. These incidents all occurred in public places, including on a metro train, in a bookstore, and in a department store. Id. Respondent pled nolo contendere or guilty to the charges and was sentenced to various periods of incarceration and probation and was ordered to complete a two-month sex offender counseling program and to register as a sex offender. Id. On December 1, 1999, respondent was released on parole, and on May 10, 2000, was arrested for a parole violation and received 12 months imprisonment. Id. at 002339. On May 10, 2001,

4

respondent was again released on parole, but was arrested on July 14, 2001, for exposing himself to a 5-year-old girl from the balcony of his apartment and, as a result, was returned to custody for violating his parole. Id., Ex. 2 at 002617. Respondent was released on parole on January 13, 2002. Id. Ex. 7 at 002339.

On May 20, 2002, respondent changed his residence without registering with local law enforcement or notifying his parole officer. Id. at 002340. Respondent's mother notified his parole officer of his new address, and on October 25, 2002, respondent was arrested. Id. Parole officers recovered respondent's computer during his arrest and an examination thereof revealed numerous images of at least 394 identifiable minors under 18 years old engaged in sexually explicit conduct. Id. at 002325. It was ultimately determined that the computer contained 1,437 images of minors, including minors under 12 years old, engaged in sexually explicit conduct, 38 images of minors engaged in sexual bondage, and 2,713 images of minors in erotic poses. Id. at 002327. The computer also contained a program that allowed users to chat in realtime and exchange child pornography. Id. This conduct led to the 2004 conviction for which respondent was incarcerated at the time he was certified for commitment.

Based on respondent's prior offense conduct, the court finds by clear and convincing evidence, and consistent with the stipulation of the parties, that respondent has engaged in child molestation, conduct which satisfies the first prong for civil commitment under § 4248.

The government presented expert testimony from two psychologists, Heather H. Ross, Ph.D. and Christopher North, Ph.D., and respondent presented expert testimony from a third psychologist, Joseph J. Plaud, Ph.D., BCBA-D. Dr. Ross is a forensic psychologist employed by the Bureau of

Prisons, and Dr. North and Dr. Plaud are private forensic psychologists. The parties stipulated to the qualifications of these psychologists, and each was received as an expert witnesses.

Although some variation existed among the experts, all three diagnosed respondent with pedophilia and exhibitionism, although Dr. Plaud opined that respondent's exhibitionism was "in remission." Gov't Ex. 2 at 002635, Ex. 4 at 000771, Resp't Ex. 2 at 000001-02. The parties stipulated and the court finds by clear and convincing evidence that respondent suffers from these mental disorders and that they are serious mental disorders, which satisfies the second prong for civil commitment under § 4248.

There was a lack of consensus among the experts as to whether respondent's disorders would result in him having serious difficulty in refraining from sexually violent conduct or child molestation if released. Dr. Ross and Dr. North answered the third prong in the affirmative, while Dr. Plaud opined that respondent would not have serious difficulty in refraining from sexually violent conduct or child molestation if released. Gov't Ex. 2 at 002637-47, Ex. 4 at 000773-77, Resp't Ex. 2 at 000002-03.

The court's determination of this prong involves consideration of respondent's volitional control. The statute does not permit commitment of individuals who are able to control themselves but who, nonetheless, are likely to choose to reoffend. Instead, § 4248 authorizes commitment only of those individuals with impaired ability to keep themselves from offending sexually.

Having considered the testimony of the psychologists, respondent's offense history, and respondent's conduct while incarcerated, the court concludes that respondent's pedophilia and exhibitionism significantly impair his volitional control. Dr. Ross described respondent's pedophilia as a chronic, lifelong condition, and respondent's substantial offense history bears this out. As Dr.

Ross noted, respondent has spent much of his life offending against young girls and, as a consequence of his behavior, has spent a significant amount of time in custody. Although Dr. Ross recognized that respondent had made some progress through limited sex offender treatment, she ultimately concluded that respondent would have serious difficulty in refraining from sexually violent conduct or child molestation, specifically sexual contact with children and exposure to pre-adolescent female children, if released. She noted numerous risk factors, but found most relevant respondent's sexual preoccupation and deviant sexual interest. The court credits the testimony of Dr. Ross, who notably interviewed respondent on at least nine or ten occasions, as respondent's conduct while both in and out of custody supports her conclusions.

Respondent's history of sexual misconduct began as early as approximately 1987, five years before his first arrest, and continued until he was arrested on federal charges in 2002. During this time, respondent offended repeatedly by exposing himself to young girls, despite serving several terms of incarceration. He offended while on parole and twice absconded supervision. Respondent was admittedly spending several hours a day engaging in child pornography on his computer at the time of his arrest in 2002. Significantly, respondent's sexual preoccupation with young girls has continued since he has been in federal custody.

In December 2003, respondent was found in possession of pictures of young girls to which he admitted masturbating, Gov't Ex. 4 at 000756-57, Resp't Ex. 2 at 000009; in January 2006, respondent was cited for possessing collages of pictures of children and admitted to receiving newsletters from the North American Man-Boy Love Association, Gov't Ex. 4 at 000757, Resp't Ex. 2 at 000010; and in February 2006, respondent was cited for possessing newspaper clippings picturing children, id. The latter two infractions occurred while respondent was participating in the

7

Habilitation Program at FCI Butner and resulted in his termination from that program. Id. In March 2007, respondent was cited for possessing, among other things, pictures of girls under age ten, a letter from man offering pictures of his 14-year-old niece and likening treatment of pedophiles to the treatment of Jews by the Nazis, a letter that appeared to be written by respondent regarding finding a child sex partner in Tijuana or the Philippines, and a letter regarding starting a child photography business. Gov't Ex. 2 at 002625. Respondent disputes that he was offered pictures of the 14-year-old girl or that he sought to obtain a child from the Philippines, although it is also noted that respondent does not dispute that he told his mother in October 2002 that he wanted to adopt a child from Mexico. At the time respondent was participating in the Sex Offender Management Program ("SOMP") at FMC Devens. Resp't Ex. 2 at 000010. Respondent participated in 11 individual therapy sessions, and the treatment notes reflected that he was unable to accept his thinking and behavior were deviant and may not have been ready to make lasting changes. Gov't Ex. 2 at 002625. In May 2007, respondent was transferred to USP Marion and was placed in SOMP treatment, but did not actively participate on the advice of his counsel. Resp't Ex. 2 at 000010. In May 2008, respondent was found in possession of a large folder with cut out pictures of young children. Gov't Ex. 9 at 001097. He claimed there was nothing improper about his possession of such material as it contained no nudity, and he demanded its return. Id. On May 12, 2008, Respondent was placed on a Correctional Management Plan ("CMP") due to his repeated possession of inappropriate materials, but approximately one week later was found in possession of numerous pictures of young children. Id. at 001090-94. On May 29, 2008, respondent requested to participate in SOMP treatment and he was placed in Phase I of the treatment program. Id. at 001067. In December 2008, respondent was found in possession of several pictures of children and

8

a list of names of well-known child victims of abduction and murder. Id. at 001045, 1049, 1059. In January 2009, respondent withdrew from SOMP treatment, id. at 001068, 1408-09, and his CMP was updated due to his continued engagement in risk relevant behaviors, id. Ex. 11 at 001395-97.

In July 2009, respondent expressed interest in restaring SOMP treatment, but again expressed concerned about civil commitment. Id. Ex. 2 at 002626. In September 2009, SOMP staff were alerted regarding materials ordered by respondent, which included catalogues and brochures containing child models, pictures of families with small children, an article about how to tell children you love them in a way they can understand, and a handout about adopting foster children. Id. Ex. 10 at 001400. In February 2010, respondent was found in possession of three pages taken from magazines, two of which featured children. Id. Ex. 4 at 000759. In May 2010, respondent's supervisor reported that respondent was in possession of two cut out pictures of young female children. Id. In July 2010, respondent was found in possession of, among other things, newspaper clippings featuring stories of child abduction, molestation, and sex slavery; pictures of children cut out from newspapers and magazines, and a typed letter containing sexually explicit comments about children. Id. In response to the confiscation of these items, respondent initiated a hunger strike and was placed on suicide watch. Id. After his removal from suicide watch, respondent again expressed interest in treatment and voluntarily turned in numerous pictures of children. Id. In November 2010, he was referred for non-residential SOMP treatment, although he was informed that his previous withdrawal from that program would preclude him from completing the program and participating in residential treatment prior to his release date. Id. Respondent was removed from his CMP in July 2011 because he had not been found to engage in any risk-relevant behaviors in the

9

past year, and he participated in SOMP treatment until he was transferred to FCI Butner in August 2011.  Id. at 000760.

Respondent admits that prior to rejoining SOMP in 2010, he was never fully committed to treatment, but contends that he has since gained insight and awareness into his offending and now knows how to deal with his "thinking errors."  It seems that there has been some de-escalation of risk-relevant conduct by respondent, as evidenced by his removal from the CMP, and all the experts agree that he has shown some progress.  Yet, even as this proceeding was imminent, respondent was unable to refrain from conduct for which he had been censured in the past.  In January 2012, respondent was found in possession of numerous magazines, newspapers, books, and advertisements, some of which contained children and others of which contained sexually explicit adult content.  Gov't Ex. 26.  Respondent also possessed a  handwritten list of child movie stars, including their ages and films, and the book "A Stolen Life: A Memoir," by Jaycee Dugard, a woman who was kidnaped as a child and sexually abused for 18 years.  Id.  Also in January 2012, respondent's mother received a letter from him of a sexually explicit nature, which so disturbed her that she notified the Bureau of Prisons and severed ties with respondent.   In June 2012, respondent was found copying 156 pages of adult pornography, id. Ex. 8 at 002651, and in August 2012, he was cited for possession of an altered copy card and for threatening an officer.  Although respondent vehemently denied stealing the card or threatening the officer, he admitted being very emotional and cursing at the officer.

Respondent emphasized that none of the materials he possessed in January 2012 were considered contraband and that only the Jaycee Dugard memoir was ultimately confiscated.  The fact that respondent fails to recognize the wrongfulness and risk inherent in his possession of these types

10

of materials, whether or not doing so violates any policy, is alarming and undermines respondent's contention that he now understands his pedophilia and past offense conduct and is capable of controlling his behavior. Dr. North suggested that respondent's possession of such items, given the pendency of this proceeding, was indicative of respondent's poor judgment and inability to cope with and solve problems related to his sexual drive and desire. Similarly, while it was significant to Dr. Plaud that respondent had stopped cutting out pictures and making collages of young girls, the court fails to see a determinative distinction between cutting out pictures and possessing such pictures in their original form in books, magazines, or newspapers. To the contrary, respondent appears to have continued his obsessive collecting of pictures of children, but in such a way as to attempt to avoid detection by the Bureau of Prisons staff.

Dr. Plaud also found of import that respondent had significant periods of time in the community–from January 2002 to October 2002 and from September 2003 to May 2004, or approximately 17 months–when he had access to children, but refrained from exhibitionistic behavior. However, the presentence report prepared in respondent's federal case on the child pornography charges indicates that respondent had been in federal custody since September 18, 2003, and Dr. Plaud's own report notes that in 2003, while in the custody of the BOP, respondent was found to be in possession of pictures of young girls to which he was masturbating. Therefore, at most, respondent refrained from exhibitionism in the community for a period of approximately ten months. During this time period when respondent had "learned to control his behavior," he was viewing child pornography for hours a day on his computer. This substitution of one victimization of children for another provides no confidence as to respondent's ability to control his pedophilic and exhibitionistic behaviors if released.

11

Dr. North testified that respondent was living a fantasy by reading newspaper articles that detailed sex crimes against children, just as he had lived a fantasy by watching child pornography on his computer or playing the game Dungeons & Dragons. This reasoning resonates with the court and is supported by much of respondent's testimony, which revealed that he maintains serious cognitive distortions regarding his interactions with his victims. For example, respondent described two girls of age five or six, who were friends of his first victim, as being "jealous" of her, and he testified that they wanted him to expose himself to them, as if to suggest these children were his partners and not his victims. The court rejects as not credible respondent's testimony that he possessed the Jaycee Dugard memoir and newspaper articles detailing sex crimes against children to gain insight into his own offending.

The psychologists each presented evidence of respondent's relative risk of reoffense using various actuarial instruments. For example, on the Static-99R instrument, Dr. Ross and Dr. Plaud scored respondent an eight (8) and Dr. North scored respondent a seven (7), placing him in the high risk category for being charged or convicted of another sexual offense. Gov't Ex. 2 at 002638, Ex. 4 at 000774, Resp't Ex. 2 at 000015. Dr. North noted that comparable offender groups were arrested or charged with a new sex offense at a rate of 38% in five years and 49% in ten years. Gov't Ex. 2 at 002641. Dr. Ross reported recidivism rates of various comparable groups from 23.7% to 45% over five years and from 39.6% to 55.3% over ten years. Id. Ex. 4 at 000774-75. Dr. Plaud applied respondent's Static-99R score to offender data stratified by age to arrive at a 23.6% five-year recidivism rate. Resp't Ex. 2 at 000015. Dr. Plaud also used the MATS-1 and scored respondent a 6, for which the corresponding recidivism rate was 25.5% over 8 years. Id. Recidivism rates are circumstantially relevant to respondent's volitional control because individuals who repeatedly

12

offend despite prior sanctions may be presumed to have considerable difficulty controlling their actions. The court considers the various relative rates of recidivism ascribed to respondent, but places greater weight on the evidence relating specifically to respondent's offense history, his particular expression of his psychological disorders, the insufficiency of past treatment, and the testimony of the experts taken as a whole.

Both Dr. North and Dr. Ross testified that respondent requires further sex offender treatment in order to refrain from sexually violent conduct or child molestation if released. Nothing in the testimony of respondent or Dr. Plaud gives the court cause to think that if released at this point in time respondent would comply with the conditions of supervision and refrain from reoffending. The limited treatment respondent has received to date appears to have led him to some realization that he has hurt his young victims, and such progress should not be minimized. It is evident, however, that respondent fails to fully apprehend yet the consequences of his actions and that his lack of volition portends further sexual offending against children absent intensive treatment.

Having considered the totality of the circumstances, the court finds by clear and convincing evidence that, as a result of respondent's serious mental disorders, he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. Therefore, all three elements for commitment are established.

Although the court is ordering respondent committed, this determination does not necessarily mean that respondent will be confined for the rest of his life. The statute provides for periodic review of the propriety of commitment. An annual report on respondent's condition will be submitted to the court, pursuant to 18 U.S.C. § 4247(e)(1)(B). Furthermore, the director of the facility where respondent will be housed may prompt the court to release respondent by certifying

to the court "that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment[.]" 18 U.S.C. § 4248(e). Finally, after the expiration of 180 days following each determination by the court regarding respondent's commitment, respondent may move for a hearing to determine whether he should be discharged. 18 U.S.C. § 4247(h). Should respondent participate and complete significant treatment while committed, the court will consider his discharge in proper course.

## CONCLUSION

As set forth in more detail on the record, and for the foregoing reasons, the court finds by clear and convincing evidence that respondent is a sexually dangerous person pursuant to § 4248. Accordingly, respondent is committed to the custody of the Attorney General.

SO ORDERED, this the 26th day of November, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge